**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**UNITED STATES OF AMERICA,**

**vs.**  Case No. 4:05cr14-RH
Case No. 4:07cv154-RH/WCS

**WILLIE HENRY WILLIAMS,**

    **Defendant.**

_____/

**REPORT AND RECOMMENDATION ON § 2255 MOTION**

    This cause is before the court for ruling on Defendant's second amended motion filed pursuant to 28 U.S.C. § 2255. Doc. 59. The Government filed a response, addressing the § 2255 motion on the merits, and submitted the appellate answer brief and the affidavit of trial counsel. Docs. 72 (memorandum) and 73 (notice of filing). Defendant was given the opportunity to file a reply, doc. 74, but has not done so.

    Defendant was charged with distributing cocaine and over five grams of cocaine base on four occasions (October 28, November 3, November 22, and December 14, 2004), in violation of 21 U.S.C. §§ 841(a), (b)(1)(B)(iii), (b)(1)(C). Doc. 1 (indictment) (counts 1-4). He was charged with possession with intent to distribute more than five

grams of a substance containing cocaine base on January 12, 2005. *Id.* (count five). He was sentenced to 168 months on all counts, to be served concurrently. Doc. 33 (judgment). That sentence was recently reduced to 135 months. Doc. 76.

As summarized on appeal,

> Williams's conviction was based on four sales of crack cocaine to a confidential informant ("CI"), and on crack cocaine seized at his house during the execution of a search warrant.

Doc. 52 (mandate), p. 2 of the attached opinion.[1] Defendant argued on appeal "that the district court abused its discretion in sustaining objections to several cross-examination questions put by Williams's counsel to an investigating officer regarding the CI's drug use," and "that the district court erred in overruling his objection to the U.S. Sentencing Guidelines Manual ('Guidelines') calculation, because the government engaged in sentence manipulation when it did not arrest him after his second drug transaction." *Id.* The judgment was affirmed.

**§ 2255 Review**

> Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal. Because collateral review is not a substitute for a direct appeal, the general rules have developed that: (1) a defendant must assert all available claims on direct appeal, and (2) "[r]elief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"

Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir.), *cert. denied*, 543 U.S. 891 (2004) (citations and footnotes omitted). Errors raised and adjudicated on direct appeal

---

[1] The opinion is also available in Westlaw, as are the briefs. United States v. Williams, 181 Fed. Appx. 805 (11th Cir. 2006) (opinion); 2006 WL 2923606 and 2006 WL 2923607 (defendant's initial brief and the Government's answer brief, respectively)

Case Nos. 4:05cr14-RH and 4:07cv154-RH/WCS

cannot be considered pursuant to a § 2255 motion. United States v. Nyhuis, 211 F.3d 1340 , 1343 (11th Cir. 2000) (citation omitted).

On the other hand, if the issue was not raised on appeal and should have been, it is procedurally barred and will not be reviewed absent a showing of cause and prejudice. *Id.*, at 1344 (citations and footnote omitted). "Ineffective assistance of counsel may satisfy the cause exception to a procedural bar," but "the claim of ineffective assistance must have merit." Nyhuis, 211 F.3d at 1344, citation omitted. Ineffective assistance of counsel may be raised in a § 2255 motion, whether or not it could be raised on direct appeal. Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690, 1693-1694, 155 L.Ed. 2d 714 (2003).

To prevail on a claim of ineffective assistance of counsel, Defendant must demonstrate that counsel's performance was deficient, *i.e.*, that his performance fell below an objective standard of reasonableness, and prejudice as a result of that deficient performance. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 2064-65, 80 L.Ed.2d 674 (1984). The court need not address both deficient performance and prejudice where a defendant makes an insufficient showing as to one. *Id.* at 697, 104 S.Ct. at 2069. It is presumed that counsel's performance was objectively reasonable, so for Defendant to show it was unreasonable, he "must establish that no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*), *cert. denied,* 531 U.S. 1204 (2001) (footnote and citation omitted). This presumption is even stronger for experienced trial counsel. *Id.*, at 1316 and n. 18 (citations omitted) (while no attorney's conduct is above the reasonableness inquiry, "[e]xperience is due some respect."). It is

noted that Defendant's trial counsel, Clyde Taylor, has practiced criminal defense for many years in this court.

For prejudice, Defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.

## Claims Raised

### Ground One

Defendant claims a violation of Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), because he was sentenced based on a determinations of drug quantity made by the probation officer, on evidence not established beyond a reasonable doubt.

> Under *Booker,* "there are two types of sentencing errors: one is constitutional and the other is statutory." "[T]he Sixth Amendment right to trial by jury is violated where *under a mandatory guidelines system* a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury." The statutory error occurs when the district court sentences a defendant "under a mandatory Guidelines scheme, even in the absence of a Sixth Amendment enhancement violation."

United States v. Ronda, 455 F.3d 1273, 1304 (11th Cir. 2006) (citations omitted, emphasis in original), *cert. denied*, 127 S.Ct. 1327, and 127 S.Ct. 1338 (2007).

The Defendant was sentenced after Booker was decided,[2] and the court considered the guidelines as advisory at sentencing. Doc. 45 (sentencing transcript), p.

---

[2] The jury determined the threshold drug quantities (5 grams or more of cocaine base) as to all five counts beyond a reasonable doubt. Doc. 23 (verdict).

24. The court determined the guidelines range was 168-210 months, and noted that while imposition of a sentence below the range would be permissible under Booker, a sentence at the bottom of the range should be imposed. Doc. 45, pp. 33, 42-44. Indeed, the Eleventh Circuit cited Booker in affirming Defendant's sentence.

> In the wake of [*Booker*], we review sentences for reasonableness, with the Guidelines considered to be advisory. *United States v. Talley*, 431 F.3d 784, 785 (11th Cir.2005) (per curiam). *Booker* did not, however, alter our review as to the application of the Guidelines. *See id. at* 786 (explaining that district court must still calculate the Guidelines range correctly and consider the factors set forth in 18 U.S.C. § 3553(a)).

Doc. 52, p. 6 of attached opinion. Defendant has not demonstrated entitlement to § 2255 relief on his Booker claim.

**Ground Two**

Defendant raises a number of ineffective assistance of counsel claims, all under ground two. These are addressed here as claims 2(a) through 2(e). The grounds appear at pp. 3 through 3-D of the motion as labeled by Defendant, and pp. 3-7 of doc. 59 as scanned in the court's electronic case filing system (ECF).

**Claim 2(a)**

Defendant asserts that counsel was ineffective prior to trial, by failing to seek funds for an expert witness to undermine the testimony of informant Tashia Walker. Defendant reasons that Walker admitted to using drugs, and contends that an expert on drug use would have cast doubt upon her credibility. Doc. 59, p. 3.

As argued by the Government, doc. 72, p. 4, Walker was cross examined extensively on her drug use and other matters, *and* the jury was instructed on considering the testimony of a witness who used addictive drugs. Doc. 43 (trial

transcript), pp. 102-118 (defense cross examination of Williams), and doc. 44 (continuation of trial transcript), p. 281 (jury instruction).  Specifically, the jury was instructed that "[a] witness who was using addictive drugs during the time he or she testified about may have an impaired memory concerning the events that occurred during that time.  You should consider the testimony of such a witness with more caution than the testimony of other witnesses."  Doc. 44, p. 281.

Defendant has not produced the affidavit of an expert or any other evidence to show what an expert might have said to further explain how the use of drugs should be considered in weighing the testimony of a witness.  Defense counsel focused on Walker's drug use and lack of credibility in closing argument.  Doc. 44, pp. 264-270.  It is common knowledge, reasonably known to a jury, that drug use may impair memory and adversely affect behavior.  An expert was not needed to make that point.  Further, the prosecutor acknowledged in response that Walker was "certainly a flawed witness," and "if all the government had was Tashia Walker, I'd tell you to throw the case out."  Doc. 44, p. 271.

Moreover, expert testimony as to drug use affecting testimony would have undermined Defendant's own testimony, which he wanted the jury to believe, as Defendant admitted to significant abuse of drugs.[3]  Defendant has not shown attorney error or prejudice to the outcome of trial.

---

[3] Defendant testified that he snorted powder cocaine about every other weekend, and used it through September, October, November, and December of 2004.  Doc. 43, pp. 190-196.  He said he'd been using cocaine for 20 years, but not necessarily buying it.  *Id.*, at 217.  The Government argued in closing that Walker was not held up as a "paragon of virtue," but what police were looking for when they found her "was somebody that could get next to Willie Williams.  He's a drug user.  She's a drug user.  They are both living on the shady side of life."  Doc. 44, p. 275.

Case Nos. 4:98cr46-RH and 4:07cv437-RH/WCS

### Claim 2(b)

Defendant asserts that counsel was ineffective with regard to jury instructions "which were not LIMITED to caution [jurors] regarding TASHIA WALKER['s] drug use, while witness WALKER acted as an informant for the government," which prevented a fair trial. Doc. 39, p. 3-A (p. 4 in ECF). He claims that such "LIMITED" instructions would have caused jurors to weigh "WALKER'S testimony with extreme caution due to instruction." *Id.* As noted above, the jury *was* instructed as to weighing the testimony of a witness using addictive drugs, and her drug use was argued to the jury. See also doc. 44, pp. 279-280 (instructions on things to consider in determining the believability of a witness). Defendant has not shown attorney error or prejudice in failing to seek some other unspecified cautionary instruction.

### Claim 2(c)

Defendant asserts ineffective assistance of counsel for counsel's failure to seek a jury instruction on lesser included offenses. Doc. 59, p. 3-B (p. 5 in ECF). He claims that this prevented him from being convicted and sentenced for a lesser charge, and "[c]ounsel violated 'Glover' as noted by the United States Supreme Court." *Id.* In Glover v. United States, 531 U.S. 198, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001), the Court held that a guidelines increase from 6 to 21 months as a result of counsel's error, could constitute sufficient prejudice under Strickland.

The jury could have found Defendant guilty of the offenses and still found that the amount of five grams or more had not been proven beyond a reasonable doubt. Doc. 23 (verdict); doc. 44, pp. 284-290 (jury instructions). The jury was advised that the additional question as to each count dealt only with the amount of cocaine base and not

powder cocaine, even though the counts charged cocaine or cocaine base. Doc. 44, pp. 284, 288-289. As noted by the Government, at trial the defense stipulated to the admission of lab reports showing the amount of cocaine and cocaine base involved in each count, the reports reflected each involved in excess of five grams of cocaine base, and Defendant admitted he made the drug sales. Doc. 72, pp. 6-7.

Defendant has pointed to no evidence at trial from which a jury might reasonably conclude that the amounts in each count were less. Thus, Defendant has not shown that a limiting instruction would have been given upon request,[4] or that it might have affected the outcome as intended by Strickland.[5] Relying upon the instructions and the verdict form that were given to the jury, the jury could have found Defendant guilty of all five counts and still find (as to any or all counts) that the substance was not cocaine base, or that the substance weighed less than five grams of cocaine base. Defendant has not established attorney error or prejudice.

---

[4] "The district court should instruct the jury on the defendant's defense theory if the theory *has a foundation in evidence* and legal support." United States v. Chirinos, 112 F.3d 1089, 1101 (11th Cir. 1997), *cert. denied*, 522 U.S. 1052 (1998) (emphasis added).

[5] The possibility of a jury pardon is not a permissible part of the calculus of prejudice to the outcome for a claim of ineffective assistance of counsel.

> In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law. An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, "nullification," and the like. A defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed.

Strickland, 466 U.S. at 694-695, 104 S.Ct. at 2068. *See also* Williams v. McDonough, 2006 WL 1687836, No. 4:04cv496-RH/WCS (N.D. Fla., June 15, 2006).

Case Nos. 4:98cr46-RH and 4:07cv437-RH/WCS

**Claim 2(d)**

Defendant asserts ineffectiveness for counsel's failure to investigate Defendant's own cell phone records. Doc. 59, p. 3-C (p. 6 in ECF). He alleges that the records would have shown that numerous calls were made to him by Walker, which would have discredited her testimony and further supported his defense of entrapment. *Id.* In the affidavit attached to the § 2255 motion, Defendant states he provided his cell phone records to counsel before trial, "and counsel did not investigate or use records at trial." Doc. 59, attachment (doc. 59-2, p. 1 in ECF).

Defendant has not offered any records to support this claim, and the Government has no knowledge of such records or any reason to believe they ever existed. Doc. 72, p. 7. The case agent testified that law enforcement subpoenaed Defendant's cellular telephone record, and the number from which the informant called (while cooperating with the Government) only showed up four times. Doc. 43, p. 67. The agent had no way of knowing if the informant called Defendant using other telephones, however. *Id.*, at 67-68, 74. Defendant testified that she kept calling him, from her mother's or grandmother's house or wherever she was staying. *Id.*, p. 183. He said she only contacted him maybe once before the first deal on October 28 (count one), and then started calling him more. *Id.*, at 186. Asked how many times, he said "[s]he'll call me two or three times up there, about the same thing," and always called on his cell phone. *Id.* He said he talked to her two or three times, not on tape, when he told her he would not sell her any more crack because he did not feel right about it. *Id.*, at 210.

In his closing argument, defense counsel asked jurors if they thought Walker would call Defendant multiple times, up to eight times, to turn up the heat on him to sell

her drugs, so she could get the hundreds of dollars she was being paid as an informant. Doc. 44, pp. 264-266, 270. Since she admitted lying to her mother to get money for drugs, he asked what would she say in court for money. *Id.*, at 265. As if quoting her thoughts, he said, "I better not say. I kept calling him. That would be bad. Government tells me I can't do that." *Id.* Counsel asked why there were no phone records, or recordings made of the calls. *Id.*, pp. 268-269.

Defendant has not submitted any telephone records, or stated any particulars as to what such records might show. He alleges they would have shown "numerous" phone calls to him by Walker, which would have been both inconsistent with her statements and supported the defense of entrapment. Doc. 59, p. 3-C (p. 6 in ECF). As noted previously, Walker was not the most credible witness and the Government acknowledged that. Defendant himself testified she only called him once before the first sale, and then called two or three times, not on tape. There is no reason to believe, based on the allegations of the motion and Defendant's sworn testimony, that records would have shown a great many calls beyond what was already admitted. By not introducing the records, the defense could point to the lack of records (like the lack of drug testing on Walker) as though the Government were trying to hide something, and argue that there could have been any number of calls because she needed the money to buy drugs. Defendant has not established deficient performance or prejudice.

**Claim 2(e)**

Defendant claims that counsel failed to preserve for appellate review "errors of the Court for conflict of interest and violation of due process claims at sentencing of petitioner's PSR." Doc. 59, p. 3-D (p. 7 in ECF). Defendant raises the conflict of interest and due process claims in grounds three and four, so these claims are addressed ahead.

**Ground Three**

Defendant raises variations of a conflict of interest claim as ground three, with subparts (a)-(d) (marked by Defendant as (a)-(c) and [another] (c)). Doc. 59, pp. 4 to 4-C (pp. 8-11 in ECF). The alleged conflict was that counsel had previously represented Willie Rump Jr., a potential Government witness. *See also* attached affidavit (doc. 59-2, p. 2 in ECF). Defendant claims that the conflict denied him "any reasonable defense due to plea arraingments [sic] made with potential government witness WILLY RUMP JR., prior to counsel's representation of petitioner. Petitioner's counsel['s] plea arraingments with [Rump] limited petitioner's defense to entrapment." *Id.* Doc. 59, p. 4-A (p. 9 in ECF). It is not clear if Defendant is referencing a plea *arrangement* or *arraignment* (or perhaps both, a plea agreement and rearraignment proceeding). Absent the conflict, Defendant claims, the "opportunity to enter into a plea would have been possible." *Id.,* p. 4-C (p. 11 in ECF).

First, Defendant alleges that counsel did not advise him of or discuss with him his conflict of interest, and had counsel properly advised him he would have asked for appointment of another attorney. Doc. 59, p. 4 (p. 8 in ECF). Second, he claims that counsel should have filed a motion to withdraw based on the conflict. *Id.,* p. p. 4-A (p. 9

in ECF). He next asserts that the court erred in failing to make him aware of counsel's conflict, inquire as to his waiver of any conflict, or order counsel to advise him of the conflict. *Id.*, p. 4-B (p. 10 in ECF). Finally, Defendant alleges error by the court in failing to appoint new, conflict-free counsel. *Id.*, at 4-C, p. 11 in ECF.

Defendant was not present at the pretrial conference when the possible conflict was raised. Doc. 43, p. 2. Mr. Taylor told the court he had received information that morning that FDLE had obtained Defendant's name during investigations of Willie Rump, Sr., and Willie Rump, Jr. *Id.*, p. 5. He recognized the name and thought he had represented one or the other, or had been contacted by one of them after their arrest. *Id.* He either represented or had significant contact with one but he was not sure if it was the one providing the information, and he said that the contact was years ago. *Id.*, p. 7. Counsel represented that he did not see an actual or potential conflict, but wanted to advise the court. *Id.*, p. 6. Since counsel had received the document just that morning, he had not yet discussed it with Defendant. *Id.*

Counsel for the Government advised that the Rumps were not on the Government's witness list, he had never interviewed them, did not know where they were, and did not know whether they were in custody. *Id.* He said: "They have no relationship with my office at all, that I'm aware of." *Id.* He noted that various lawyers having clients who knew Defendant had contacted him hoping to cooperate with the Government in this case, but he declined all offers as unnecessary in light of the other evidence. *Id.*, pp. 6-7.

Counsel said he raised this as a potential problem depending on Defendant's testimony. "If he gets up and says, I don't know nothing about nothing, I wasn't doing

anything, and these guys came along, then you're sort of . . . getting into the entrapment issue." *Id.*, p. 7. The court said there would be cause for concern if this was a current client who would benefit from Defendant being convicted, but confirmed he was not a current client and it had been "[a]t least a couple of years" since their contact. *Id.*, pp. 7-8. The court said it was not worried about it. *Id.*

Since trial started in the morning and counsel had just received notice that a possible former client was involved that same morning, he advised the court first at a conference out of Defendant's presence. Advice to Defendant by the court or counsel, about a possible conflict or waiver, is not apparent on the record.

As established in Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), "a defendant who shows that a conflict of interest *actually affected the adequacy of his representation* need not demonstrate prejudice in order to obtain relief." Mickens v. Taylor, 535 U.S. 162, at 168, 170, 122 S.Ct. 1237, at 1242, 1243, 152 L.Ed.2d 291 (2002), *quoting* Cuyler with added emphasis.

As summarized by the Eleventh Circuit,

> An attorney's performance must be adversely affected by the conflict of interest before there is a constitutional violation. If a trial court improperly requires joint representation of co-defendants over timely objection, reversal is automatic. *In all other conflict situations*, there is no Sixth Amendment violation, and thus no reversal, absent a showing that an actual conflict of interest adversely affected counsel's performance.

Hunter v. Secretary, Dept. Of Corrections, 395 F.3d 1196, 1200 (11th Cir. 2005) (emphasis added) (collecting cases, including Strickland). To demonstrate an actual conflict, Defendant must make a factual showing of inconsistent interests or point to specific instances in the record suggesting a conflict. Quince v. Crosby, 360 F.3d 1259,

1264 (11th Cir.), *cert. denied*, 125 S.Ct. 436 (2004) (citations omitted). To demonstrate an adverse effect he must show that counsel failed to pursue a reasonable alternative strategy because it conflicted with counsel's other alleged loyalties. *Id.*, at 1264-65 (citations omitted)

Defendant has not shown any actual conflict or possible adverse effect. The record shows that any contact between counsel and one of the Rumps had been several years before, and counsel could not recall whether it was Rump, Sr., or Rump, Jr. (hereafter referenced as Rump, since it is unclear which one was involved and it makes no difference here). Nor could counsel recall if he represented or had just spoken to Rump. Rump was not listed or called as a witness by the prosecution, and had not been interviewed by the prosecution in connection with this case.

Further, Defendant's claims that his limited his entrapment defense and ability to enter a plea are unsupported (if not refuted) by the record. Counsel presented an entrapment defense, and Rump was not called in rebuttal. Defendant refers to a plea or other proceeding involving Rump and counsel which somehow limited his own ability to enter a plea, but has not provided any particulars. A search of PACER reveals no criminal case regarding a Willie (or William) Rump on the docket of this court and or any other districts around the country.[6]

Finally, from this record it is appears it was only the Defendant himself who prevented a plea. or *See* doc. 43, p. 4-5, 77; doc. 73, attached affidavit and exhibit from counsel (pp. 37-40 in ECF). Before jury selection counsel advised the court that

---

[6] The dockets are available electronically through PACER (Public Access to Electronic Records).

Case Nos. 4:98cr46-RH and 4:07cv437-RH/WCS

"[w]e have made every effort to resolve this case prior to trial," that he had Defendant sign a document explaining the guidelines and possible ranges of sentence, "[a]nd he indicates he still wants to go to trial.  I would feel – I think it would be smart if the court would ask him if, in fact, he wants to go to trial."  Doc. 43, p. 4.  Counsel for the Government and for Defendant also wanted the court to inquire as to whether Defendant really wanted to testify, "[w]e've made it real clear that the case should have been resolved . . . ."  *Id.*  The court agreed to inquire as to Defendant's desire to testify, but did not want to question him too closely about his decision to go to trial.  *Id.*, pp. 4-5.  Later, after the jury was excused for lunch, the court advised Defendant that he had the right to testify or not to testify, and to go to trial or not go to trial, and these were his decisions to make.  *Id.*, p. 77.  The court said:  "You should talk with Mr. Taylor and Mr. Winn [co-counsel] about that, and you should consider their advice, but all they give you is advice.  It's your decision."  *Id.*

In his affidavit, Clyde Taylor states that he and Winn visited Defendant at the Federal Detention Center a number of times, to discuss the case, evidence, and Defendant's sentence exposure.  Doc. 13, attached affidavit, pp. 2-4 (pp. 36-38 in ECF). He estimated that, given his prior history, Defendant could be sentenced to 17 to 21 years unless he cooperated.  *Id.*, p. 3 (p. 37 in ECF).  Petitioner reviewed and signed a handwritten document from counsel, setting out the possible range of sentences anywhere from 151-262 months, with a notation that the sentence could be higher.  *Id.*, pp. 3-4 (pp. 37-38 in ECF).  The signed document, dated June 2, 2005 (the Thursday before trial commenced on June 6, 2005), is attached to counsel's affidavit.  *Id.*,

(attachment) (p. 40 in ECF).  Both Defendant and counsel signed under the following statement:

> N/W/S above – [Defendant] wants to go to trial on Monday.
> The above is an <u>estimate only</u> of [Defendant's] potential sentence ranges in this case.  It has been disclosed to [Defendant] for plea discussion purposes.

*Id.* The current assertion of conflict of interest is vague, unsupported, and does not entitle Defendant to § 2255 relief.

**Ground Four**

Defendant raises two variations of a due process claim as ground four.  Doc. 59, pp. 4 to 4-A (pp. 8-9 in ECF).  Defendant claims that he was denied due process when counsel failed to discuss the presented report (PSR) with him before sentencing and failed to seek a continuance of sentencing, which prevented him from objecting to inaccurate information regarding drug quantities and the denial of federal benefits.  Doc. 59, p. 4 (p. 8 in ECF).  He also argues that the court should have continued sentencing upon learning that counsel and Defendant had not previously discussed the PSR, and this prevented him from objecting to information regarding drug quantities and the denial of federal benefits.  *Id.*, p. 4-A (p. 9 in ECF).  Instead, Defendant claims the court only recessed for six minutes, which was not a reasonable amount of time for him to discuss the PSR with counsel.  *Id.*

The PSR was sent to counsel with a letter dated July 26, 2005, which noted the scheduled sentencing date (September 1, 2005), and that "[o]ne copy of this report should be provided to and discussed with your client prior to the sentencing proceeding."  Doc. 28.  At sentencing, Defendant was asked if he had read the PSR and

addendum, and he responded "I've read them, yes." Doc. 45 (sentencing transcript), p. 3. He said he had not previously discussed it with counsel. *Id.* The court took a recess to give Defendant a chance to talk to counsel. *Id.* The transcript shows recess was taken at 9:18 a.m. and proceedings resumed at 9:24 a.m.. *Id.* Defendant was asked "have you had a full opportunity to discuss the presentence report with Mr. Taylor?" and he responded "[y]es, sir." *Id.* He did not indicate additional time was needed, and he had (by his own statement) already read the PSR and addendum.

Defense counsel filed objections to the PSR on August 18, 2005, and the Government responded. Docs. 29 and 30; PSR, ¶ 90. As summarized in the PSR, counsel objected to ¶ ¶ 11-15 (offense conduct), to ¶ ¶ 19 and 27 (obstruction of justice), to ¶ ¶ 20, 29 and 32 (acceptance of responsibility), to ¶ ¶ 23, 28, 30 and 33 (offense level), to ¶ 76 (supervised release) and to ¶ 87 (factors that may warrant departure).[7] PSR, ¶ ¶ 91-102.

Counsel argued his objections at sentencing. Doc. 45, pp. 24-27. The court found that the PSR correctly calculated the guidelines range, rejected Defendant's sentencing entrapment argument, and found that the drug quantity attributed to Defendant by the PSR was correct. *Id.*, pp. 27-31. The court found that Defendant did not accept responsibility, and had obstructed justice by giving false testimony at trial. *Id.*, p. 31. The court based its findings on all testimony and from observing Defendant when he testified. *Id.*, pp. 32-33. The court found beyond a reasonable doubt that Defendant willfully gave materially false evidence at trial. *Id.*, pp. 33-34.

---

[7] The PSR erroneously refers to ¶ 76 as factors that may warrant departure. PSR, ¶ 101.

The Government asked for a sentence of 210 months (the top of the guidelines range), but the court found a sentence of 168 months (the bottom of the range) was sufficient. *Id.*, p. 41.

Defendant was allowed to address the court, and he thanked the Lord for being in his life. *Id.*, pp. 34-35. He did not complain of inaccuracies in the PSR as to drug quantity or anything else, nor did he express the need for more time to review the PSR with counsel. Defendant, therefore, has not shown any error, and certainly not a violation of due process, for not being permitted additional time to review the PSR.

The Government addresses the claim of a denial of "federal benefits" as a denial of benefits pursuant to 21 U.S.C. § 862, and asserts there were no grounds to oppose the permanent ban on benefits required by § 862(a)(1)(C). Doc. 72, p. 10. The PSR actually referenced § 862(a)(1)(B), which gives the court discretion to declare a defendant ineligible for benefits for up to ten years. PSR, ¶ 84. It also referenced U.S.S.G. § 5F1.6, allowing the court to deny eligibility. PSR, ¶ 85. Defendant does not allege what, if any, federal benefits were actually denied to him.[8] Moreover, assuming he was denied or declared ineligible for benefits, even now Defendant does not identify any objection he could have made, so the lack of additional time was not prejudicial. This claim is insufficient and does not entitle him to § 2255 relief.

---

[8] As defined in § 862, "federal benefits" includes "any grant, contract, loan, professional license, or commercial license" by an agency or funds of the United States, but "does not include any retirement, welfare, Social Security, health, disability, veterans benefit, public housing, or other similar benefit, or any other benefit for which payments or services are required for eligibility." § 862(d)(1)(A) and (B). Monthly social security benefits are not paid while someone is confined in jail or prison for conviction of a criminal offense. 42 U.S.C. § 402(x)(1)(A)(i).

Case Nos. 4:98cr46-RH and 4:07cv437-RH/WCS

**Recommendation**

It is therefore respectfully **RECOMMENDED** that Defendant's second amended § 2255 motion (doc. 59) be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on January 5, 2009.


s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.